# Wilkins's Estate.

A testator having specifically devised a part of his real estate to his daughter, it was afterwards extended under a writ of *liberari facias* for the payment of a debt of the testator: *Held,* that the husband of the devisee, who became the administrator *de bonis non cum testamento annexo,* and who paid the amount of the execution, was entitled, on the settlement of his administration account, to a credit for the amount of the debt thus collected out of his wife's estate, for the purpose of enabling him to recover the same out of the residue of the estate appropriated by the will of the testator for the payment of his debts.

APPEAL from the decree of the orphans' court of *Allegheny* county.

William Robinson, Esq., administrator *de bonis non* with the will annexed of John Wilkins, deceased, presented his account of the administration of the said estate to the orphans' court, in which he claimed certain credits, for reasons which are fully stated in the

[Wilkins's Estate.]

report of the auditors to whom the account was referred by the court:—

The accountant further claimed credit for the following items, to which the auditors considered he was not entitled as administrator, and which they did not allow.

1. He claimed credit for the proportion of the debt due by the estate to the county of Allegheny, which was satisfied by levy and *liberari facias* on a lot specifically devised to the wife of the accountant before ner marriage,     $1417 00
And interest on the same to April 1837,     1169 00
                                                    ————— 2586 00

It appears to the auditors that the testator had, in his last will and testament, made certain specific devises, and among them lot No. 354 to his daughter Mary Ann, afterwards and yet the wife of the accountant; that he had also made the said Mary Ann, and her four younger sisters, the devisees of his real estate not named in his will, and had charged it with the payment of his debts, in so far as his personal estate should prove deficient. The accountant having afterwards married the said Mary Ann, entered into possession of the said lot No. 354, and it was afterwards levied upon by virtue of judgment and execution for the above debt, due by the estate to the county of Allegheny, and a *liberari facias* No. 93, of April term 1823, issued to deliver the same to the treasurer of the county, to make thereout the sum of 1417 dollars, the remainder of the judgment being at the same time charged upon the adjoining lot, No. 353. The commissioners, to avoid the risk and trouble of collecting the rents of the property under the *liberari facias*, leased the whole to the accountant, by agreement entered into the 28th of June 1823, and he covenanted to them the annual rent of 587 dollars, in quarterly payments, being 200 dollars per annum less than the annual value at which it was appraised when delivered to the plaintiffs under the *liberari facias*, clear of all taxes, &c. Pursuant to this agreement, William Robinson paid to the treasurer of Allegheny county as follows:

Oct. 16, 1823, for quarters ending 1st of July
  and October,     $293 50
Jan. 2, 1824, for quarter ending 1st of January,     146 75
  Then between the 8th and 17th of January,
1824, he obtained letters of administration *de bonis non* of the estate, and afterwards paid as follows:
May 3, 1824,     146 75
July 2,   "      146 75
January 2, 1825, paid his note given July 2,
  1824, for the balance ascertained according
  to agreement,     89 92
                                                    ————— 1099 42

IX,—M*

[Wilkins's Estate.]

Thus the judgment in favour of the county, to the amount of 1417 dollars, was paid and extinguished for the above sum. It was not and is not assigned to the accountant. But the accountant claims that he is entitled to credit against the estate for the whole amount of the lien thus discharged. The auditors decide that he has no right to charge it against the estate at all. This is not a case for substitution. The accountant was not administrator at the time he entered into the agreement under which the judgment was extinguished. He was one of the devisees (or represented one of them) who were entitled to the residuary estate charged with the debt. As residuary devisees, they were all bound for the debt not paid out of the personal estate; bound, because their estate was bound. He had to pay this part. Two of the other residuary devisees were forced, by levies on their specific devise, to pay other debts. It is therefore a case wherein the accountant has a right to demand contribution from the co-residuary devisees; and even if he had a right to charge this item against the estate, the auditors cannot recognize his right to claim any thing more than he has actually paid to extinguish the lien and interest. If he had been a purchaser for a valuable consideration, with warranty, he would not be allowed more; and the auditors cannot see that a devisee who gets the land for nothing, is placed in any better situation.

2. The accountant also claims credit for the following sums paid by him for taxes and expenses of certain proceedings at law relating to certain lots of ground, being part of the residuary estate of the testator, and which was contingently charged with the payment of the debts, viz.

Cash paid N. B. Craig, counsel fee in ejectment
|  |  | against A. Hopkins, | $25 | 00 |
| " | " | Thomas Farley, for taxes, 1833, | 5 | 40 |
| " | " | John Gormly for taxes, 1834 and 1835, | 9 | 00 |
| " | " | Costs of the Supreme Court in Hopkins' case, | 8 | 40 |
| " | " | W. W. Fetterman, counsel fees in Hopkins and Sample case, | 100 | 00 |
| " | " | H. M. Watts, counsel fees, without costs, | 45 | 00 |
| " | " | John Kennedy, counsel fees, without costs, | 80 | 00 |
| " | " | Costs No. 320 and 321, August 1826, | 16 | 50 |
| " | " | Thomas Farley for taxes, 1836, | 8 | 55 |

327 85

These items have not been allowed by the auditors, because the property, relative to which these sums were expended, were claimed, or were in reality the property of the five residuary devisees, were not devised to the executor, and were not subject to the control of the accountant as administrator *de bonis non,* unless there should

[Wilkins's Estate.]

be a deficiency of personal assets to pay the debts. No such deficiency appears, and the accountant could not, as administrator, defend at law or pay taxes on real estate held by himself and others under a devise, and which he and they individually, not the estate, were bound to defend.

*A. W. Foster*, for appellant.
*Lowrie*, for appellee.

The opinion of the court was delivered by

KENNEDY, J.—The wife of the accountant was one of several specific devisees of certain portions of the real estate of the testator, as also one of several devisees of the residuum of his real estate, not specifically devised; which, with the personal estate, was charged with the payment of his debts; and if necessary for that purpose, his executors were authorized to sell and dispose of it. The personal estate proved insufficient to pay the debts; and though admitted that the residuum of the real was sufficient to supply the deficiency in the personal, yet not having been sold by the executors for that purpose, and the commissioners of Allegheny county having a judgment against the estate, sued out a writ of *fieri facias* thereon, by virtue of which the real estate specifically devised to the wife of the accountant, was taken in execution and extended. The accountant at this time, not having become the administrator of the estate, made an arrangement with the commissioners of Allegheny county, and by obtaining time for the purpose, paid off the judgment; some portion thereof before he became administrator, and the residue subsequently. In settling his administration account he claimed to charge the estate with the amount of the money thus paid, and interest thereon from the time of payment. The auditors and the court below thought he was not entitled to have a credit allowed to him for the same in his account, and accordingly rejected it. Some other credits claimed, which were considered by the auditors as depending entirely upon the allowance or disallowance of the amount paid the commissioners of the county, were also rejected. The accountant considering himself aggrieved by the decision of the court, in this behalf, appealed therefrom to this court. The only objection, of any apparent weight, made against the accountant's being allowed the credits claimed by him is, that it would enable him or his representatives to proceed for the recovery of the amount thereof against that portion of the testator's real estate which has been specifically devised to others. This, however, by no means necessarily follows; because it would be the duty of whomsoever he may be that shall have the further administration of the testator's estate, to make sale of so much of the residuum thereof as will produce money sufficient to pay the amount or balance remaining unpaid. It is clear that this ought to have been

[Wilkins's Estate.]

done originally by the executors of the will, so as to have prevented the accountant from being subjected to the payment of the money to the commissioners in the manner he was: the residuum was the fund appropriated by the testator in his will to that end: and this being the case, his executors ought to have carried it into effect. But their neglect, in this respect, ought not to prejudice the accountant. And if there be no other claims on this fund appropriated to the payment of debts beside his, he or his representatives would be entitled to the whole of it, if requisite to pay their claim. If, however, there be other claims, the aggregate amount of all which it is not sufficient to discharge, then they may be apportioned; and for the balance coming to the accountant, he or his representatives may look to the specific devisees for contribution. The accountant might, as administrator *de bonis non cum testamento annexo,* have sold as much of the residuum of the real estate, as would have reimbursed him the money he paid in discharge of the debts against the estate, and in preserving it for that purpose. It could have done no injury to any one, and would have been in strict conformity to the will of the testator. Hence we think that he ought to have credit for the amount of it, with interest thereon, as calculated by the auditors, being equal to 1946 dollars: as also for the further sums of money amounting to 427 dollars 85 cents, being expenses incurred by the accountant in protecting the residuary estate for the payment of debts, and for his services rendered therein; making in the whole, a further credit of 2373 dollars 85 cents beyond the amount allowed by the orphans' court, which we direct to be given to the accountant. So far, therefore, as the decree of the orphans' court is changed and altered by this allowance of 2373 dollars 85 cents, as a credit to the accountant, it is reversed, and affirmed as to the residue. This will leave a balance of 2124 dollars 24 cents coming to the accountant, which we consider justly due to him, with interest thereon from the 1st of March 1837.

Decree accordingly.